HEYWOOD et al. v. OGDEN MOTOR CAR CO.

No. 4493.   Decided April 13, 1928.   (266 P. 1040.)

*Pratt & Pratt,* of Ogden, for appellant.

*Henderson & Johnson,* of Ogden, for respondents.

HANSEN, J.

This action arose out of a written lease whereby the plaintiffs leased to the defendant certain premises located in Ogden City, Utah. The plaintiffs' complaint sets out five causes of action. The first cause of action is for the recovery of rent alleged to be due and owing under the terms

of the lease. The second cause of action is for damages alleged to have been done by the lessee to the roof of the building located upon the leased premises. The third cause of action is for money paid by the lessors for electric power furnished to light the leased premises. The fourth cause of action is for repairs to the leased building made by the plaintiffs which they alleged should have been made by the defendant. The fifth cause of action is for attorney's fees for the prosecution of plaintiff's action.

Defendant admits in its answer the execution of the lease and that defendant is in possession of the leased premises. The answer denies generally the allegations of plaintiffs' second, third, fourth, and fifth causes of action. Facts are also alleged in the answer by reason of which defendant claims it is entitled to a number of set-offs against the rent reserved to the plaintiffs under the contract of lease. Defendant further alleges in substance that it was prevented from entering into the possession of the leased premises on December 1, 1924, by reason of the fact that plaintiffs failed and neglected to perform their part of an agreement whereby plaintiffs became obligated to put the leased premises in a fit suitable condition for use and occupancy before December 1, 1924; that, by reason of the failure of the plaintiffs to perform their agreement in this respect, defendant was deprived of the use of the whole of the leased premises until December 9, 1924, and was also deprived of the use of a part of the leased premises until December 28, 1924, to defendant's loss in the sum of $237.85. Defendant also alleged in its answer that plaintiffs agreed to paint, calcimine, clean, and repair the leased building, but that they failed to perform their agreement in this respect, and that defendant was compelled to and did paint, calcimine, clean, and repair the leased building at a cost of $181.70. As an additional set-off, the defendant alleges:

"(h) That in the month of July, 1925, over the protest of defendant, plaintiffs caused the electrical power, motor and appliances to be

detached and removed from said elevator and converted the same into a hand power elevator, thereby so decreasing the rental value of said leased premises that the same are not and have not since been reasonably worth to exceed $350 per month, by reason of the greater expense and loss of time and labor to operate said elevator in the movement of defendant's automobiles, to defendant's continued damage from month to month in the excessive amount required to be paid by defendant from month to month under the terms of said lease.

"Defendant further alleges that it has hitherto repeatedly demanded of plaintiffs that they pay to defendant, by credit upon said rents or otherwise, the losses and damages so in the manner aforesaid sustained by it, and monthly heretofore as the rents for which plaintiffs sue have become due, said defendant has offered and tendered to plaintiffs the difference between said rents and defendant's losses, but plaintiffs have refused and still continue to refuse to accept said differences or allow said credits or pay said losses; that defendant now affers and is ready, willing, and able to pay such difference."

Plaintiffs filed a reply to defendant's answer. In the reply it is admitted "that at the time of the execution of said lease plaintiffs agreed to make certain minor repairs upon said premises," and it is alleged "that all * * * repairs * * * were made by plaintiffs as agreed." Plaintiffs deny that defendant was deprived of the use of the whole or any part of the leased premises after December 1, 1924: They allege also that the defendant released plaintiffs from any liability resulting from a failure of defendant to secure possession of the leased premises because of an appended agreement to the lease. The appended agreement to the lease reads as follows:

"It is further agreed by the parties hereto that, if the lessee be denied the possession and/or occupancy of the said premises, or any part thereof, at the time of the commencement of the term of this lease, or thereafter, by reason of the failure of the present tenant, Wattis-Kimball Motor Company, a corporation, to vacate the same, then said lessors shall not be liable, and are hereby released from any liability, therefor, and in such event said lessee shall look to, and/or hold liable, said Wattis-Kimball Motor Company for any and all losses and/or damages of whatsoever kind and nature, resulting to lessees by reason such denial of said possession and/or occupancy."

Replying to defendant's claim for a set-off because of the change in the elevator, the plaintiffs allege:

"Replying to paragraph (h) of the affirmative defense set up in said answer, admit that in the month of July, 1925, plaintiffs changed said elevator from an electric power to a hand power elevator, which said change was necessary to make said elevator conform to the requirements of law. Deny that said change decreased the rental value of said leased premises, in that the ground floor only of said premises was leased to defendant, and allege that the loft above said ground floor which said elevator served was not leased to defendant, and that as to the use and occupation of said loft was a mere licensee. Deny that defendant was or has been damaged by said change in any amount whatever."

At the conclusion of all of the evidence, the trial court instructed the jury in part as follows:

"The court takes the responsibility of disposing of this action, in part, and you are instructed that the defendant is not entitled to recover anything on either of the counterclaims set forth by him in his answer and counterclaim.

"You are therefore instructed to find a verdict for the plaintiffs, and against the defendant, for the sum of $1,566.28, being for the rent of the demised premises for the months of September, October, and November, 1925, together with interest thereon, and the sum of $46.83 paid by plaintiffs for electric lights as set forth in their third cause of action, to which you will add such sum, if any, as you may find the plaintiffs to be entitled to recover for attorney fees in this action.

"The court has dismissed the plaintiffs' action as to the second and fourth causes of action."

Thus the only question submitted to the jury for determination was the amount that should be allowed as attorney fees for the prosecution of this action. The jury returned a verdict in favor of the plaintiffs and against the defendant for the sum of $1,766.28, and judgment was entered accordingly. A motion for a new trial was made by the defendant and denied by the court. Defendant prosecutes this appeal from the judgment.

Defendant first assigns as error the failure of the trial court to dismiss plaintiffs' action. It appears from the record that, after this action was commenced, the assets of the estate of Abbott R. Heywood were distributed to Elizabeth Guthrie Heywood and John Guthrie Heywood, and they were discharged as executrix and executor of the estate. It is contended by the defendant that, upon the final distribution of the estate and discharge of plaintiffs as executrix and executor, they ceased to have capacity to further maintain this action. Comp. Laws Utah 1917, § 6513, provides:

"An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action or proceeding survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In the case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

Upon distribution this cause of action passed to the distributees, and defendant, therefore, was not entitled to have the action dismissed. Nor may defendant be heard to insist that the trial court should have ordered a substitution of the distributees for the executrix and executor. No motion was made for a substitution, and hence no error can be predicated upon the court's failure to order a substitution. The rule announced by this court in the cases of *Firman* v. *Bateman,* 2 Utah 268, and *National Bank of the Republic* v. *Hapgood,* 9 Utah 85, 33 P. 241, support this view. To the same effect is 1 C. J. § 227, pp. 145, 146, and cases cited in the footnote.

It is next urged that the trial court erred in refusing to submit to the jury defendant's claim of a set-off on account of it being deprived of the use of the leased premises during a part of the month of December, 1924. The premises

were leased for a period of three years beginning December 1, 1924, and extending to December 1, 1927. The lease fixes the rent for the first year at $487.50 per month, the second year at $500 per month, and the third year at $525 per month. Defendant offered evidence tending to establish these facts: That, when the contract of lease was executed, the Wattis-Kimball Motor Company, a corporation, was in possession of the leased premises; it vacated the premises November 30, 1924, and delivered the keys to one of the entrances to the leased building to the defendant; when negotiations were being carried on as to the terms of the lease, the plaintiffs promised defendant that the leased building would be painted, calcimined, cleaned, and repaired, ready for occupancy on December 1, 1924; that none of this work had been done when the Wattis-Kimball Motor Company moved out; that during the first eight days of December the workmen of the plaintiffs were engaged in performing this work throughout the leased building, and as a result defendant was unable to move in; that part of the building was not ready for occupancy until the latter part of December; that the plaintiffs failed and refused to perform some of the renovation and repair of the leased building as agreed; that the defendant was compelled to and did, at its own expense, perform some of the work which plaintiffs' agreed to perform; that the first month's rent was paid by a check on December 8, 1924, on which was written "rental December 8 to January 8"; that the check was accepted by plaintiffs and by them cashed.

The trial court took the view that, when the keys were accepted by the defendant, such acceptance of the keys placed the defendant in constructive possession of the premises, and therefore defendant is not entitled to a set-off, even though defendant was deprived of the use of the premises on account of the workmen being engaged in ther repair of the leased building. We are of the opinion that the trial court was in error in so hold-

ing. If the agreement was as contended by the defendant, it was entitled to possession of the building ready for occupancy on December 1, 1924. The written lease does not contain an express covenant of quiet enjoyment. It is, however, quite generally held that a covenant of quiet enjoyment by the lessors is implied in every lease for a term of years. 36 C. J. § 695, p. 74; Jones, Landlord and Tenant § 344, p. 372; Underhill on Landlord and Tenant, vol. 2, § 427, p. 697. Obviously the defendant was not in the quiet enjoyment of the premises during the time plaintiffs' workmen prevented it from taking actual possession. The fact that the defendant had possession of the keys to one of the entrances of the leased building did not alter the situation. Nor does the appended agreement to the lease aid the plaintiffs. It will be observed from the appended agreement, which we have heretofore set out, that the plaintiffs are not relieved from liability under the lease except that occasioned by the failure of the Wattis-Kimball Motor Company to vacate the leased premises. Defendant is not here complaining that the Wattis-Kimball Motor Company had not vacated the leased premises at the time of the commencement of the term of the lease here involved. The Wattis-Kimball Motor Company vacated the premises on November 30, 1924.

It is further contended that the trial court erred in its refusal to submit to the jury the issue raised by the pleadings as to whether or not the plaintiffs painted, calcimined, cleaned, and repaired the leased premises as they agreed. Upon this issue it is not claimed that the evidence of the defendant is insufficient to justify a finding by the jury that the plaintiffs failed to perform their agreement in this respect. The trial court refused to submit this issue to the jury upon the ground that all of the negotiations had before the lease was executed were merged in the written agreement of lease. It is defendant's contention that the agreement to renovate and repair the leased building was collateral to the agreement of lease, and

that the two agreements were not merged. In support of
its contention, defendant cites the following cases: *Welz*
v. *Rhodius,* 87 Ind. 1, 44 Am. Rep. 747; *Lewis* v. *Sea-
bury,* 74 N. Y. 409, 30 Am. Rep. 311; *Hines* v. *Wilcox,*
96 Tenn. 148, 33 S. W. 914, 34 L. R. A. 824, 832, 54
Am. St. Rep. 823; *Wehnes* v. *Roberts,* 92 Neb. 696, 139
N. W. 212, Ann. Cas. 1914A, 452; *Parker* v. *Weber County
Irr. Dist.* (Utah) 251 P. 11. These cases support or tend
to support defendant's contention.

In this case, however, defendant's answer alleges and
plaintiffs' reply admits that there was an agreement where-
by plaintiffs should make certain repairs on the leased
premises. Plaintiffs' defense to defendant's claim in this
respect is not that the contract of lease contained all of
the agreements had between the parties to the lease, but
that the plaintiffs performed their part of the agreement
to repair the leased building. Plaintiffs, having admitted
a collateral agreement in their reply, may not now be heard
to contend that there was no such agreement or that all
agreements were merged in the contract of lease. An issue
was joined by the pleadings as to whether or not plaintiffs
have made the repairs that they agreed to make. The evi-
dence is in conflict upon this issue, and should have been
submitted to the jury.

It is also urged by the defendant that the trial court
erred in refusing to admit evidence and to instruct the jury
upon the issue of whether or not the defendant suffered
any injury by reason of the change made by the plaintiffs
in the manner of operating the elevator located in the leased
building. The defendant offered to show that, when
the premises were leased to it, an elevator was in
operation in the building; that while negotiations
were being had for the lease of the building plaintiffs stated
to defendant that the upper floor to which the elevator ran
was valuable for storage purposes; that the upper floor is
valuable for storage purposes; that at the time the lease
was executed the elevator in the leased building was electri-

cally operated; that the rental value of the leased building is decreased $100 per month without the use of the upper floor and the elevator; that in July, 1925, the electrical equipment attached to the elevator was removed by plaintiffs and the elevator converted into a hand power elevator, over the objections and protests of the defendant; that by reason of the change made by the plaintiffs in the manner of operating the elevator the rental value of the leased premises was reduced to not to exceed $350 per month; that the expense of operating the elevator by hand power amounts to $177 per month.

The trial court rejected much of the evidence which defendant offered to establish these facts. At the conclusion of the evidence, the court refused to submit to the jury the claim of the defendant for a set-off because of the change made by the plaintiffs in the manner of operating the elevator. The reason assigned by the trial court for rejecting the evidence and refusing to submit to the jury defendant's claim for a set-off on account of the change in the elevator was thus stated by the court below:

"According to the allegations of the answer, what the plaintiffs did * * * was a trespass, for which it has a right of action for damages. By the change in the elevator defendant was not evicted from any portion of the premises. Defendant continued to use the elevator after the change for the very same purpose it was using it before. It was never deprived of the beneficial use of the premises."

The position of the learned trial court, as we understand it, is that, if the change made by plaintiffs in the elevator was merely a trespass, any damage that defendant may have suffered by reason of the change may not be pleaded as a set-off or counterclaim against an action for the rent, but, on the other hand, if an eviction resulted from what plaintiffs did, such eviction may be pleaded as a defense to the action for rent. Counsel in their respective briefs have, at some length argued the question of whether the facts pleaded in the answer and attempted to be proved consti-

tute an eviction or a trespass. The distinction between a trespass and an eviction is discussed in Jones on Landlord and Tenant, § 354, p. 378; Underhill on Landlord and Tenant, vol. 2, § 671, p. 1131 et seq.; 36 C. J. § 983, p. 256. An examination of the authorities shows that the distinction between the eviction and a trespass is not well defined, but generally speaking an eviction is an aggravated form of trespass. It is also a general rule of law that a breach of a covenant for quiet enjoyment cannot occur without an eviction, actual or constructive. A mere trespass of the landlord does not constitute a breach of the covenant for quiet enjoyment. We are disposed to agree with the learned trial court in his view that defendant's answer pleads, and its proffered proof tends to establish, a trespass rather than an eviction. We, however, do not agree with the trial court's conclusion that damage caused by the landlords' trespass may not be pleaded as a set-off or counterclaim to the landlords' action for rent. It should be observed that the plaintiffs do not, in their pleadings, raise any question of defendant's claim for damages for the change in the elevator being a proper subject-matter of a set-off or counterclaim in this action. Plaintiffs' reply admits that they made the change in the elevator, and seeks to justify the change because the "change was necessary to make said elevator conform to the requirements of law."

Comp. Laws Utah 1917, provides:

Sec. 6575. "The answer of the defendant must contain:

"1. A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief, or a specific admission or denial of some of the allegations of the complaint, and also a general denial of all the allegations of the complaint not specifically admitted or denied in the answer;

"2. A statement of any new matter constituting a defense or counterclaim."

Sec. 6576. "The counterclaim mentioned in the next preceding section must be one existing in favor of a defendant and against a

plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action;

"2 In an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

Sec. 6577. " If the defendant omit to set up a counterclaim in the cases mentioned in the first subdivision of the next preceding section, neither he nor his assignee can afterward maintain action against the plaintiff therefor."

We are of the opinion that defendant's claim for damages caused by the change in the elevator is a counterclaim coming within the first subdivision of section 6576, Comp. Laws Utah 1917, supra, and therefore defendant may properly plead its claim for damages in this respect as a counterclaim to plaintiffs' action for the rent under the lease. We are also of the opinion that, if defendant had not so pleaded its counterclaim, neither it nor its assignees could afterwards maintain an action against the plaintiffs therefor. Defendant's claim for damages on account of the change made by the plaintiffs in the elevator is connected with the subject of the plaintiffs' action, in that both claims grow out of the relation of landlords and tenant existing between them, and both claims are based upon defendant's right to the use and occupancy of the leased premises. We are therefore of the opinion that it was prejudicial error to refuse to permit the defendant to introduce proper proof of its claim for damages growing of the change made by the plaintiffs in the elevator located in the leased building.

The judgment is reversed, with directions to the court below to grant a new trial. Appellant is awarded its costs.

THURMAN, C. J., and CHERRY, STRAUP, and McCREA, District Judge, concur.

GIDEON, J., did not participate herein.