HEYWOOD et al. v. OGDEN MOTOR CAR CO.

No. 5107. Decided December 26, 1931. (6 P. [2d] 171.)

*Henderson & Johnson,* of Ogden, for appellants.

*Royal J. Douglas,* of Ogden, for respondent.

STRAUP, J.

A written lease was entered into by and between the plaintiffs and the defendant whereby certain buildings in Ogden City were leased by the plaintiffs to the defendant for a term of three years from December 1, 1924, to December 1, 1927. Portions of the leased premises were sublet by the defendant. The main portion was occupied by the defendant, in which it conducted an automobile garage business. The portion so occupied by it consisted of the ground floor and an upper floor referred to by some of the witnesses as a "loft." When the premises were leased and accepted by the defendant, there was a freight elevator operated by an attached electric motor in the portion of the premises occupied by the defendant to hoist or carry automobiles and other objects from one floor to the other. The rent to be paid by the defendant was $487.50 a month for the first year, $500 a month for the second year, and $525 a month for the third year, payable monthly in advance. The defendant having failed to pay the rent for the months of September, October, and November, 1925, the plaintiffs brought this action on the first count of the complaint to recover payment of such rental amounting to $1,465.50; on a second count for damages resulting from injury to the roof of the building amounting to $175; on a third count for failure of the defendant to pay for electrical services which the defendant had agreed to pay amounting to $55; and for failure of the defendant to keep the heating system of the leased premises in repair which the defendant had agreed

to do, and, because of such failure, the plaintiffs were required to make the repairs at an expense of $58, all of which amounts the plaintiffs sought to recover together with an attorney's fee of $200, or a total of over $1,950.

The defendant answered the complaint, admitting the lease as alleged in the complaint and its failure to pay the three months' rent as in the complaint alleged, denying other material allegations of the-complaint, and by way of counterclaim alleged that the plaintiffs failed to give possession of the premises within the time stated in the lease to the defendant's damage in the sum of $112; that the defendant was required to paint a portion of the outside of the buildings, kalsomine the walls, and repair the heating plant at an expense of $130, all of which it alleged the plaintiffs had agreed to do; and that the plaintiffs, over the objections and protest of the defendant, changed and converted the elevator in the building from an electrically operated elevator to a hand-operated elevator, and thereby decreased the rental value of the building from $500 to $350 a month, and created an increased expense in operating the elevator by hand labor, to the defendant's damage in the sum of $4,350. A reply was filed putting in issue all of the material allegations of the counterclaim.

The case was tried twice. On the first trial the court directed a verdict in favor of the plaintiffs in the sum of $1,566 for nonpayment of rent, dismissed the complaint as to all other counts, held that the defendant was not entitled to recover on either count of its counterclaim on the ground that the matters therein alleged were not proper matters of a counterclaim, and hence dismissed the counterclaim. Judgment was rendered accordingly. On an appeal by the defendant from that judgment, we held the court erred in dismissing the counterclaim, and remanded the case for a new trial. *Heywood* v. *Ogden Motor Car Co.*, 71 Utah 417, 266 P. 1040, 62 A. L. R. 1232.

On a retrial of the case before the court and jury, the court submitted the case to the jury on all of the issues pre-

sented by the complaint and the counterclaim. So far as disclosed by the record, the jury rendered a mere general verdict finding "the issues joined in favor of the defendant and against the plaintiffs in the sum of $925.26." Judgment on the verdict was entered accordingly, from which the plaintiffs prosecute this appeal. While the court submitted to the jury all of the counts of the complaint and of the counterclaim, still there is not anything to indicate what, if anything, the jury allowed the plaintiffs on the ground of nonpayment of rent, nor what allowance, if any, was made on any of the other counts of the complaint, nor what allowance the jury made on any or on all of the counts set forth in the counterclaim, the jury merely finding "the issues joined in favor of the defendant and against the plaintiffs in the sum of $925.26."

However, on the record there is no dispute that the defendant failed to pay the rent for the three months in question amounting to $1,462.50, and that the plaintiffs were entitled to recover such amount, together with interest, but for the alleged damages presented by the counterclaim, the principal damage of which was that claimed to have resulted from the alleged matters that the plaintiffs, over the objection of the defendant, changed and converted the elevator from an electrically operated elevator to one operated by hand; and the principal assignments and discussions in the briefs relate to alleged errors committed by the trial court in receiving and rejecting testimony and in instructing the jury in respect of such portion of the counterclaim.

The defendant, to support its counterclaim in such particular, called its president, who in part, and over the objection of the plaintiffs, testified that several days prior to the execution of the lease, and when bargaining with respect therto, one of the executors of the Heywood estate stated to the witness that the elevator in the leased premises was an electrically operated elevator, and it would be possible to quickly lift automobiles from the lower floor to the upper floor, and that the executor stated that, because of the electric elevator, the rental of the property was easily

worth $100 a month more than it would be without the operation of the elevator electrically.

Such witness further testified that from December, 1924, when the defendant took possession of the premises, until some time in July, 1925, the elevator was operated by means of an electric motor attached thereto; that during such period approximately fifteen automobiles by means of the elevator were daily carried from one floor to the other; that in the month of July, 1925, the elevator by the plaintiffs "was changed from an electric power driven elevator to a hand operated elevator"; that the change was made over the defendant's objection; that it took two or three weeks to make the change; that before the change the elevator could be and was operated by one man; that, after the change, it took at least four men to operate the elevator, and that, "if we wanted to take up a carload of cars, which consisted of three Hudsons and 4 Essexes, we would have to take 6 men to do it," which "necessitated taking our men that we had employed as mechanics away from their work to operate the elevator whether we were moving cars up or down, and that it took four men six and one-half to seven and one-half minutes to elevate a car." Then the witness was asked by counsel for defendant: "Q. Did you ever make any estimate of the additional expense of operating that elevator in that manner?" to which the witnesses answered: "Yes, sir," and then was asked: "Q. You may state what it was." To that counsel for plaintiffs objected on the ground that the testimony called for was incompetent, irrelevant, and immaterial, and "not the proper measure of damages in this case." The court overruled the objection, and the witness answered that the estimate made was $177 a month, and that he arrived at such amount by considering that it took seven hours a day to lift fifteen cars from one floor to the other, and by multiplying the number of days per month and the cost per hour per man, and by considering the loss of time the defendant suffered by using its mechanics and taking them away from profitable labor, and that it took only about forty-five

seconds to carry "a car from the ground floor to the upper floor with the electric appliance."

Then the witness was asked by counsel for the defendant: "Q. Can you state how much the rental value of those premises was decreased, if at all, by reason of the change made in the elevator? Can you answer that question? A. I think so.

"Q. You may state what the decreased amount was per month, in your opinion." To that counsel for plaintiffs objected that the testimony called for was incompetent, irrelevant, and immaterial, and called for a mere conclusion of the witness, which objection was overruled, and the witness answered: "At least $150 per month." On cross-examination the witness, among other things, stated that some of the mechanical devices of the elevator were changed, and that "I believe there was some change made (by the plaintiffs), but just in what manner the gearing was changed I do not know, there was a change of ratio of the gearing," that the motor was on a platform separate and apart from the elevator shaft, that he believed the motor transmitted power through gears or belts, and that the electrical motor was detached and left "on the floor up stairs."

The sales manager of the defendant also was called by the defendant, who in part testified that the elevator broke in operating it; that one of the gear wheels broke and that the elevator dropped; that the plaintiffs were notified and the elevator repaired in August, 1925, by the plaintiffs, and after that the elevator was operated by hand, which was a slow process. The witness further testified that the elevator fell in July, 1925, before any repairs had been made thereon, and that prior thereto there were parts of the elevator that were not in good condition; that the motor was left in the same place it was before; that it took seven minutes and four men to raise a car from the first to the second floor and two men to lower a car from the second to the first floor, after the elevator was repaired.

Then the witness by counsel for the defendant was asked: "Q. I will ask you whether in your opinion there was any

decrease in the rental value of the premises occupied by the Ogden Motor Car Company by reason of the change in this elevator service?" and the witness, over the objection of counsel for plaintiffs that the question was leading, did not call for a proper measure of damages in the case, and called for a conclusion of the witness, was permitted to answer that there would be a decrease of rent in the sum of $150 a month.

Another witness was called by the defendant who was engaged in the real estate business. After reciting to the witness certain statement of facts with respect to the change of the elevator and repairs made, he was asked by counsel for the defendant:

"Q. I will ask you what your opinion is as to whether or not the conversion of that elevator from an electric power elevator to a hand power elevator, whether or not the rental value of those premises or that property was affected by that change? A. Yes.

"Q. Was it decreased or depreciated?" To that the plaintiffs objected on the ground that the testimony called for was incompetent, irrelevant, and immaterial and was not the proper measure of damages, and that no sufficient foundation was laid to permit the witness to express an opinion, which objection was overruled and the witness answered: "A. Decreased." Then he was asked: "Q. What in your opinion was the depreciation per month?" and, over the objection of the plaintiffs, the witness answered: "I should judge somewhere between $125 and $150 per month." Other witnesses were called who, over objections of the plaintiffs, gave similar testimony.

In rebuttal the plaintiffs called a witness, who, after having qualified to testify concerning the matters and things on which he was interrogated, testified that he was acquainted with the elevator in question, and knew how it was operated prior to the summer of 1925 and before the elevator had fallen; that it was a hand-power elevator operated by an electric motor attachment; explained the mechanism and devices of the elevator, and the kind of elevators acceptable

to the commission, the latter part of which testimony of the witness, on motion of the defendant, and over the objection of the plaintiffs, was stricken.

The court having sustained objections of the defendant to other testimony of the witness, the plaintiffs made separate offers to prove by the witness: (1) That, after the elevator had fallen, and before the repairs had been made, a number of gears were broken in their teeth and mesh, and that it was necessary to make the repairs which were made, which offer was objected to by counsel for the defendant on the ground that it was incompetent, irrelevant, and immaterial and the objection sustained; (2) that in making the repairs the electrically propelling device was disconnected, but the motor was left on the property where it theretofore was, and that at a cost and expense, including labor and material, not to exceed $75, the motor could have been attached to the elevator, which offer was objected to by the defendant on the grounds heretofore stated and on the further ground that "we were not obliged to go to that expense or to any other expenses" and the objection sustained; (3) that, by reason of the changes made by the plaintiffs in repairing the elevator, the type of elevator was not changed, and that its type prior to the repairs and afterwards was a hand elevator, which likewise was objected to on grounds heretofore stated and the objection sustained; (4) that the elevator before the repairs were made was not reasonably safe either as a hand elevator or with the electric appliances attached, that prior to the making of the repairs the elevator did not have proper safety appliances, and that in making the repairs the elevator was equipped with such appliances, which also was objected to on grounds heretofore stated, and the objection sustained; (5) that the capacity of the elevator prior to the repairs was only 1,500 pounds, and that the defendant, in raising automobiles, loaded the elevator with weights of from 4,000 to 4,500 pounds, which usage was beyond the capacity of the elevator, and that the making of such use caused the elevator to break and fall and be out of repair, which offer also was objected to on

the same grounds heretofore stated and the objection sustained; (6) that prior to the falling of the elevator it did not have the necessary safety appliances, and that at the time of the repairs the plaintiffs supplied the elevator with such appliances, which offer was objected to, and the objection sustained.

In instructing the jury, the court, among other things, charged that:

"It appears from the evidence that plaintiffs leased to defendant as a part of the leased premises an electrically equipped elevator with electric motor and appliances, by which the elevator was moved from the ground floor to the floor or store rooms above, and that it was and had been used to carry automobiles and accessories from the lower floor to the upper floor and back, when necessary. It also appears that in the month of July, 1925, or thereabouts, the motor and appliances were detached and removed from the elevator by plaintiffs, against the will and consent of the defendant, by workmen employed by plaintiffs for that purpose, and the elevator was converted by plaintiffs into a handpower elevator to be operated by handpower with the aid of pulleys. Such acts on the part of plaintiffs constituted a trespass, for which the defendant may recover such loss or damage it may have sustained. In such case the defendant is entitled to recover from plaintiffs the decreased monthly rental value of said premises from the time of such change or conversion until the 30th day of November, 1927, if shown, with interest at the rate of eight per cent per annum on the aggregate sum from the time of the change in said elevator to the present time.

"In this connection, evidence was introduced on behalf of the defendant tending to show the increased cost or expense of operating the elevator after the change was made. This evidence was received merely for the purpose of the bearing it might have on the question of the depreciation in the rental value of the premises after such change, viewed in the light of all the circumstances shown in evidence and of the rent agreed to be paid by the terms of the lease, and may be considered by you only for such purpose."

All these rulings, among others, are complained of and presented for review. They are assailed on various grounds. One of them is that the court erroneously excluded the proffered testimony of the plaintiffs which it is claimed was material to, and had a bearing on, the question of damages

attach the motor after the repairs had been completed, and that their failure to do so was a breach of duty, yet, in as well as on the general issues; erroneously admitted on behalf of the defendant incompetent and improper testimony with respect to the same subject-matter; and submitted the case to the jury on a wrong and improper measure or basis of damages.

Let first the charge be noticed in the particular wherein the court gave the jury a binding instruction on the subject of trespass by the plaintiffs. The evidence shows that the elevator in the use and operation by the defendant broke and fell, that the defendant notified the plaintiffs to repair it, and that the plaintiffs, though not by the terms of the lease required to do so, nevertheless voluntarily made the repairs. No claim is made that such repairs were made negligently or unskillfully. What is claimed by the defendant is that the elevator, when it broke and fell, was, and prior thereto had been, operated electrically by a motor, and that in repairing the elevator the motor was detached and left on the premises without having been attached; and because thereof it was claimed by the defendant the elevator was converted from an electrically operated elevator to a hand operated elevator. That, the court told the jury, constituted "a trespass," notwithstanding the court refused the plaintiffs to show that no change was made in the elevator, except the installation of safety appliances with which the elevator was not theretofore equipped; that the type of the elevator was not changed; that it before and after the repairs were made was a hand elevator; and that the detached motor was left on the premises where it theretofore was, and could have been attached at an expense of not to exceed $75. We are not now dealing, as we did on the first appeal, with allegations of the counterclaim, but with the evidence on the subject. So viewing the matter, we think there was no element of trespass present. Though it be assumed that the plaintiffs, who at the request of the defendant voluntarily undertook to repair the elevator, were in the discharge of such duty required to

view of the evidence, such failure did not constitute a trespass. We thus think the court erred in binding the jury that on the evidence the plaintiffs as matter of law were guilty of a trespass.

The chief assignment involves the proposition or question of damages. It is the contention of the plaintiffs that, as no issue is tendered, and no claim made that the plaintiffs negligently made the repairs, and as the chief complaint of the defendant is that the plaintiffs, after the repairs had been made by them, failed to attach the motor to the elevator, thereby requiring it to be operated by hand power instead of by electrical power, and as offered to be shown by the plaintiffs the motor could have been attached at a comparatively small expense, the proper measure of damages was the reasonable cost and expense to attach the motor and equip the elevator with necessary electrical appliances to electrically operate it; and, no matter what rule be applied as to the measure of damages, the defendant, and as offered to be proved by the plaintiffs, was required to use care to diminish and not enhance its damages within well-recognized principles of law that there is imposed upon a party injured by a breach or tort of another to use care and make reasonable efforts to render the injury or damage as light as may be when that may be done with reasonable and moderate expense as compared with the amount of resulting damages, if not done; and if by negligence or willfullness the injured party allows the damages to be unnecessarily enhanced or increased, the loss which was avoidable by the performance of such duty falls upon him.

As is seen, the court refused to permit the plaintiffs to develop or offer any proof upon such theory, in effect held, and as was contended by the defendant, that the defendant was under no obligation to do anything or make any effort to diminish its damages or loss, even though the elevator, as was offered to be proved, was put out of commission and service by the defendant overloading it, and thereby caused it to break and fall. And, because plaintiffs, in repairing

the elevator, failed to connect it up with the motor so that it could be operated electrically, and though, as offered to be proved, that could have been done at a comparatively small expense, the defendant nevertheless was permitted to enhance and increase its damages in rental value of the premises from the time the elevator fell until the end of the lease, a period of about two and one-half years, substantially the life of the lease, plus interest on the total amount from the time the elevator fell until the end of the lease.

We think the court erred in such particular, and ought to have given the plaintiffs the opportunity to develop and prove facts in support of the theory contended for by them. If upon the giving of evidence in support thereof, which if in conflict, the plaintiffs were entitled to go to the jury on such theory with proper instructions applicable thereto; and, if not in conflict, then the plaintiffs were entitled to have the case ruled on such theory and principles of law. 1 Sutherland on Damages (4th Ed.) § 155, p. 475, and cases there cited; 17 C. J. 882; *Hearn* v. *McDonald*, 69 W. Va. 435, 71 S. E. 568; *Hartford Deposit Co.* v. *Calkins*, 186 Ill. 104, 57 N. E. 863; *Young* v. *Extension Ditch Co.*, 13 Idaho 174, 89 P. 296; *Willis* v. *Branch*, 94 N. C. 142; *Clark Lloyd Lumber Co.* v. *Puget Sound & Cascade Ry. Co.*, 96 Wash. 313, 165 P. 94.

The premises were not leased for any specific purpose or to carry on any particular business. The lease is silent as to that. So is it as to the elevator. No mention is made of it in the lease. Though it be assumed the elevator was a fixture, and as such a part of the leased premises, yet it was not like a roof or a wall or a heating plant essential to the enjoyment of the premises. It was useful and convenient in carrying on the particular kind of business carried on by the defendant. The premises by the terms of the lease not having been leased for such specific purpose, and the plaintiffs not having agreed or covenanted to keep the premises or its equipments in repair,

but voluntarily undertook to repair the elevator, and by doing so were required to use due care and not negligently injure the defendant, the defendant, before it could resort to a difference in rental value as to the measure of damages, was required to show that through the want of skill or by the negligence of the plaintiffs the elevator was rendered unfit or unsuitable for service, and that it could not have been repaired and rendered fit or suitable at a moderate or reasonable cost and expense. In other words, if the defendant, in the exercise of due care, and with reasonable efforts and at a moderate cost and expense, could have attached the motor and electrically equipped the elevator, and thereby diminished its injury and damage, the defendant was required to do so; and, if it willfully failed and neglected to do that, the proper measure of damages would be such reasonable cost and expense, together with the defendant's loss of the use of the elevator occasioned by the negligence or failure of the plaintiffs until the elevator could have been restored.

However, it was the view of the defendant, and so was ruled by the court, that, regardless of such considerations and of any care or efforts on the part of the defendants to diminish its damages, the proper and only measure of damages was the difference in the rental value of the premises occasioned by the failure of the plaintiffs in making the repairs to attach the motor so that the elevator could be electrically operated as it was operated before it broke and fell. In so ruling, and in so submitting the case to the jury as was done, we think the court erred; and, in connection therewith, erred in rejecting the offered proof of the plaintiffs and in refusing to permit them to develop the theory as to the measure and diminution of damages contended for by them. And, as is seen, some of the proffered and rejected testimony had a bearing, not only on the question of the measure or diminution of damages, but also on the general issue.

Over the objection of the plaintiffs, witnesses, called by the defendant without sufficient foundation having been

laid and without sufficient qualifications of the witnesses shown, were permitted to express opinions or conclusions as to what in their judgment was the difference in the rental value of the premises with the elevator operated electrically and operated by hand power. Some of them, too, were permitted to base their opinion on and by considering the defendant's increased cost of the operation of the elevator by taking highly paid employees from what the defendant called profitable employment to operate the elevator by hand power involving mere common labor. We think the court erred in such rulings.

Over the objection of the plaintiffs, the defendant was permitted to give in evidence a statement or declaration made by one of the executor plaintiffs to the president of the defendant several days before the lease was executed, to the effect that the leased premises were easily worth $100 a month more because of the electric elevator. That, and as stated by the defendant when such testimony was offered and received, was to show an admission on the part of the plaintiffs that the rental value of the premises without the electric elevator was $100 less a month than with an elevator operated electrically, and as an admission that the defendant was damaged to that extent. We think the court erred in that. We need not pause now to consider the rule and the limitations thereof as to when and under what circumstances statements or declarations of an executor or other legal representative of an estate may be received in evidence as an admission by or against the estate, nor when statements or declarations made by one executor or administrator not in the presence, as here they were not, of his co-executor or administrator, may be so received (2 Jones, Comms. on Evidence [2d Ed.] §§ 975 and 976; 1 Elliott on Evidence, § 263, 22 C. J. 407), for that the statement or declaration here was the mere personal opinion of the declarant and irrelevant to the agreement or terms of the lease as to the amount of rent agreed to be paid. It is doubtful if such an expressed opinion made even by an owner of premises to the other contracting

party would be competent, or have any evidentiary or probative value, for that the other contracting party, in agreeing upon the terms of the lease and the amount of rent to be paid, presumably would have as much knowledge as did the declarant of the matters concerning which the opinion was expressed, and could not be heard to say that, in agreeing upon the terms of the lease, he relied on such declaration or statement, especially not in the absence of fraud or misrepresentation or the like. Still more doubtful is it if such a declaration or statement of a mere personal agent of the owner in leasing premises could be received in evidence as an admission of the owner for any purpose. Still more restricted are statements and declarations of an executor or administrator received in evidence as an admission against the estate or heirs represented by him. Further, in leasing the premises, the executors acted, and were required to act, under order of the court who directed, as under the statute (Comp. Laws Utah 1917, § 7709) the court is required to direct, the terms and length of time of the lease. The executors' authority to make the lease was thus directed by the court and on terms as the lease in fact was made. That could not be modified, explained, or influenced by some mere personal opinion of the executor expressed by him several days prior to the execution of the lease, any more so than if he had expressed an opinion to what extent it was to the advantage of the defendant to be permitted to sublease portions of the leased premises and at what rental they could be subleased. Hence the opinion declared or expressed by one of the executors was clearly beyond the scope of his trust, and was wholly irrelevant and his mere personal opinion, upon which the other contracting party could not rely.

Let the judgment of the court below be reversed and vacated, and the cause remanded for a new trial; costs to the plaintiffs and appellants. Such is the order.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.