## WORKMAN MOTOR CO. v. PACIFIC FINANCE CORPORATION

No. 5264. Decided November 23, 1933. (26 P. [2d] 961.)

*H. D. Moyle* and *Robert C. Wilson,* both of Salt Lake City, for appellant.

*Irvine, Skeen & Thurman* and *J. R. Haas,* all of Salt Lake City, for repsondent.

ELIAS HANSEN, Justice.

Plaintiff brought this action to recover the value of two Durant automobile trucks alleged to have been converted by the defendant. As originally filed, plaintiff's complaint also contained a second cause of action whereby plaintiff sought an accounting from the defendant. Defendant demurred to the original complaint upon the ground that a cause of action for a conversion could not properly be joined with a cause of action for an accounting. The demurrer was sustained, whereupon plaintiff dismissed, without prejudice, its cause of action for an accounting.

In its answer defendant denied that plaintiff was either the owner or entitled to the possession of the trucks described in plaintiff's complaint, and alleged that the title to, and the right of immediate possession of, the trucks were in the defendant at the time complained of by reason of a conditional sales contract held and owned by the defendant; that, at the time the two trucks mentioned in plaintiff's complaint were repossessed, a Dodge automobile purchased by one Rosell, upon which there was delinquent $141.70, was also repossessed and sold at a loss of $72.21; that, on account of the repossession and sale of the two trucks described in plaintiff's complaint and the Dodge automobile, plaintiff was entitled to the sum of $21.03, which sum was paid by the defendant to plaintiff.

As a further defense, and by way of a counterclaim, defendant in substance alleged that, at the time complained of, and prior thereto, plaintiff was engaged in the retail business of selling automobiles and of discounting its contracts for the sale of automobiles with the defendant; that plaintiff had discounted contracts for the sale of the two

trucks mentioned in its complaint, together with certain other contracts for the sale of automobiles by the plaintiff to other mentioned persons; that plaintiff had assigned such contracts to the defendant and had guaranteed the payment of the amounts owing on such contracts; that the payment of the amounts owing upon such contracts was also guaranteed by the Workman Live Stock Company; that the purchasers of the various automobiles mentioned in the contracts so assigned to the defendant had become delinquent in the payment of their contracts, and defendant had repossessed the automobiles conditionally sold and delivered to the purchasers; that defendant had sold such automobiles so repossessed, with the result that the amount received from such sales was insufficient to pay the amount owing upon the contracts of sale; that, after selling the automobiles so repossessed by the defendant and applying the proceeds of such sales upon the contracts, there remained a deficiency of $1,328.57; "that on account of what is known in the automobile financing business as dealers' reserve, there is due and owing from this defendant to the plaintiff the sum of $671.56, and on account of contingent credits, the further sum of $269.00, making a total credit due from this defendant to the plaintiff of $940.56, leaving a balance due and owing from the plaintiff and cross-defendant, Workman Motor Company, and the cross-defendant the Workman Livestock Company, to this defendant, of $388.01." Defendant prayed judgment against the plaintiff for that amount, together with interest thereon and for costs.

Plaintiff moved the court to strike defendant's counterclaim upon the ground, among others, that the same was not pleadable as a counterclaim to the cause of action alleged in plaintiff's complaint. The motion was granted. Upon the issues thus jointed by plaintiff's complaint and defendant's answer thereto, the action was tried by the court sitting with a jury. Plaintiff secured a verdict against the defendant for the sum of $1,650. In due time judgment was rendered upon the verdict. The defendant appeals. By its as-

signments of error, 66 in number, defendant seeks a reversal of the judgment because of the ruling striking defendant's counterclaim, because of the refusal to grant defendant's motion for a nonsuit, because of rulings in the admission and rejection of evidence, because of refusal to instruct the jury as requested by the defendant, because of certain instructions given to the jury, and because defendant's motion for a new trial was denied. Plaintiff has made no cross-assignments of error.

A consideration of the evidence received at the trial is necessary to a decision of some of the questions raised on this appeal, and a brief summary of the evidence at the outset will be of aid in our discussion and decision of some of the other questions here presented.

Plaintiff claimed that it deraigned its title and right to possession of the trucks from the defendant. Plaintiff offered in evidence a written conditional sales contract entered into on May 10, 1929, between the plaintiff and defendant. The contract contains numerous provisions, only a few of which need be considered. By the terms of the contract, the defendant agreed to sell, and plaintiff agreed to buy, the two trucks in question and two other automobiles for the sum of $2,754.50, of which sum $407.92 was paid down and the remainder was, by the contract, made payable on July 9, 1929. The amount left unpaid on each of the trucks was $589.96. The conditional sales contract also contained the following provisions:

"6. In the event the Purchaser fails or neglects to comply with any of the terms, covenants or conditions of this contract, or to make any of the several payments provided for herein, when due, * * * or in case the Purchaser shall fail to comply with any of the terms, covenants or conditions of any other contract existing between the Purchaser and the Seller, the Seller, at his option, and without notice to the Purchaser may elect to declare the whole purchase price immediately due and payable, or the Seller, may, without notice to the Purchaser, declare all of the rights of the Purchaser under this contract terminated, and without demand first made, and with or without legal process, immediately take possession of said personal property wherever found, * * * and hold the same discharged from further

liability under this contract, and the Purchaser waives all claims for damages due to, or arising from, or connected with any such taking. * * *

"7. Until the Purchaser has fully complied with all the terms, covenants and conditions of this contract, and made all of the payments as herein provided, said personal property, including all parts, accessories and equipment now or hereafter attached to or used in connection with said personal property shall belong to, and the title to said personal property shall remain in, the Seller. Possession of said personal property shall give the Purchaser no title or interest therein and no rights except as herein provided. If the Purchaser shall fully comply with all of the terms, covenants and conditions of this contract, and make all of the payments as herein proviedd, the Seller agrees to give a bill of sale of said personal property, or as much thereof as remains in existence, to the Purchaser and convey title to him. Notwithstanding anything to the contrary contained herein so long as the Purchaser is not in default in any manner hereunder, he shall have the right to have title to each separate motor vehicle which remains in existence, conveyed to him upon payment of the sum set opposite the same. * * *

"12. Time and each of its terms, covenants and conditions are hereby declared to be of the essence of this contract, and acceptance by the Seller of any payment hereunder, after the same is due, shall not constitute a waiver by him of this or any other provisions of this contract.

"13. It is agreed that this instrument contains the entire agreement between the contracting parties and that no statement, promise or inducement made by any party hereto, or employee, agent or salesman of either party hereto, which is not contained in this written contract, shall be binding or valid. * * *"

It is also made to appear that defendant and plaintiff, prior to the execution of the conditional sales contract, entered into an arrangement whereby the defendant agreed to advance the purchase price or the greater part of the purchase price of automobiles which were purchased by the plaintiff. Conditional sales contracts were taken as security for the payment of the money so advanced. When the automobiles were sold by the plaintiff, the contracts of sale were assigned to the defendant as security in lieu of the conditional sales contracts. The payment of the conditional sales contracts and also the purchasers' contracts was guaran-

teed by the Workman Livestock Company. M. H. Workman, president of the plaintiff corporation, was permitted to testify on behalf of the plaintiff, over timely objection by the defendant, that prior to the execution of the conditional sales contract two of the officers of the defendant corporation stated that thereafter, when contracts were made for the purchase of automobiles, plaintiff, upon payment of the insurance, interest, and 10 per cent of the principal amount owing on a conditional sales contract, would be given the privilege of renewing from time to time such contracts for additional periods of 60 days, the total of such renewals, however, not to exceed 6 months. Mr. Workman also testified that the defendant company owed him some money on account of contingent credits and reserves which had been permitted to accumulate during the year that the defendant company had financed plaintiff as a retail automobile dealer; that under date of May 31, 1929, defendant rendered to plaintiff two statements, one showing the amount of plaintiff's reserve account and one showing the amount of plaintiff's contingent credit with the defendant. The statements were received in evidence. They showed that plaintiff company had a reserve account in the sum of $571 and a contingent credit account of $414 with the defendant. Mr. Workman also testified that he had the following conversation with the associate manager of the defendant company in July, 1929, at the office of the defendant company at Salt Lake City:

"I asked him about the reserve that was due me as of May 31st as the statement which he had given me which were to be paid July 1st and he said, 'Well, I have got to get authority from the home office to do this, which I have not received yet.' I said, 'Would it be possible for you to turn this reserve and contingent credit on these wholesale notes?' He said, 'Yes, that will be all right. We can do that.'"

That the wholesale notes referred to in that conversation were the conditional sales contract covering the two trucks in controversy. Plaintiff's evidence further tends to show

that during the early part of 1929, plaintiff made a further payment of $138.02 on the conditional sales contract held by the defendant. Under date of August 12, 1929, defendant notified plaintiff that there was due on the conditional sales contract covering the trucks the sum of $531 principal and interest in the sum of $2.65. The statement so notifying plaintiff of the amount due also contained a notation that defendant would "extend this contract for 30 days upon the payment of the following: Interest, $2.65; extension charge, $2.65; insurance, $1.50; total $6.80." So far as appears, defendant did not pay the sum of $6.80 mentioned in the notice of August 12, 1929, and no further payments were made on the conditional sales contract.

Defendant's witnesses denied that Mr. Workman was promised a 60-day extension of time in which to pay his conditional sales contract, and also denied having had any conversation with Mr. Workman with respect to crediting any reserves or contingent credits on the purchase price of the trucks in question. We, however, are not concerned with such conflicts in the testimony. It was for the jury to determine who spoke the truth in such respect. Defendant offered to show that a number of persons who had purchased automobiles from the plaintiff and whose contracts of purchase had been assigned to the defendant by the plaintiff had defaulted in their payments, and that, as a result, defendant had been compelled to repossess such automobiles and sell the same at a loss; that the total of the losses so incurred by the defendant was in excess of the amount of contingent credits and reserve to which plaintiff was entitled. Upon objection by the plaintiff such evidence was rejected. Defendant complains of such ruling.

In the foregoing summary we have confined ourselves to a recital of the substance of only such portions of the evidence received and rejected as we deem necessary to consider in reaching a proper conclusion on the questions of law which divide the parties in this litigation.

It is earnestly urged on behalf of the defendant that the court below was in error in striking its counterclaim. Our attention is directed to the provisions of Comp. ██ Laws Utah 1917, § 6576, wherein it is provided:

"The counterclaim mentioned in the next preceding section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action;

"2. In an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

Defendant claims that the following cases support its position: *Westminster Investment Co.* v. *McCurtain*, 39 Utah 544, 118 P. 564; *Robison* v. *Robison*, 59 Utah 215, 203 P. 340; *Heywood* v. *Ogden Motor Co.*, 71 Utah 417, 266 P. 1040, 62 A. L. R. 1232. An examination of those cases will reveal that they are readily distinguishable from the instant case. Looking solely to the pleadings, as we must do in testing the ruling of the court striking defendant's counterclaim in the case in hand, the facts alleged by the defendant come more nearly within the rule announced in the cases of *Smith* v. *Alford*, 31 Utah 346, 88 P. 16; *Peterson* v. *Bean*, 22 Utah 43, 61 P. 213; and *Beck* v. *Lee*, 52 Utah 31, 172 P. 686. The making and assigning to the defendant of the contract for the sale of other automobiles were in no sense, so far as appears from the pleadings, a part of the transaction complained of by plaintiff in its complaint. So far as appears from the language of the counterclaim which was stricken, defendant made no claim that it had a lien on the trucks in question by reason of the purchasers' contracts which were assigned to it by the plaintiff. An action upon a contract may be pleaded as a counterclaim to an action for a tort when, and only when, such counterclaim "arises out of the transaction set forth in the complaint as the foundation of

plaintiff's claim or connected with the subject matter of the action." Nothing is alleged in the counterclaim which shows that the defendant's taking of the trucks had that connection with the contracts sought to be set up as a counterclaim which the law requires. The rule as to the kind of connection that must exist between a pleadable counterclaim and the subject of the action is thus stated in 57 C. J. 415, § 65:

> "It is difficult to determine or to lay down a rule for determining when a cause of action set forth in the counterclaim is so connected with plaintiff's cause as to be allowable under the section allowing a counterclaim connected with the subject of the action, for the word 'connected' may have a broad signification; the connection may be slight or intimate, remote or near, the best rule for determining the required connection being that the counterclaim must have such a relation to, and connection with, the subject of the action that it will be just and equitable that the controversy between the parties as to the matters alleged in the complaint and in the counterclaim should be settled in one action and by one litigation, and that the claim of the one should be offset against or applied upon the claim of the other. But some connection between the claims themselves, independent of their being held by the parties to the action, is required, which may be shown from their originating in the same contract, or transaction, or both, involving some right or interest in the subject of the action. The connection must not be casual or incidental; it must be immediate and direct, such as may be assumed to have been contemplated by the parties in their dealings with each other. The mere fact that defendant sets up acts on the part of plaintiff which are prejudicial to the rights of defendant, and that he alleges that these prejudicial acts on plaintiff's part are the reason defendant committed the acts complained of by plaintiff, does not constitute such a connection with the subject of plaintiff's cause of action as to make such acts pleadable as a counterclaim. Where the facts set up by defendant constitute a defense to plaintiff's claim, they are connected with the subject of the action."

It will be observed from the law just quoted that the mere fact that plaintiff was in default on some sales contracts other than the contract for the sale of the trucks was not such a connection with the subject-matter of plaintiff's action as to entitle defendant to plead such other contractual obligations as a counterclaim. Had the facts as shown by the evidence been more specifically pleaded, the connection be-

tween plaintiff's cause of action and the other sales contracts may well have been sufficient to make the latter pleadable as a counterclaim. Be that as it may, the language of the counterclaim which was stricken did not show that connection with plaintiff's cause of action which is required by the provisions of Comp. Laws Utah 1917, § 6576.

We, however, are of the opinion that the evidence tending to show that plaintiff was in default on some of the contracts which it assigned and guaranteed the payment of to the defendant was admissible in evidence on the general issue. Plaintiff, in part at least, relied on the conditional sales contract for its title to the trucks. One of the provisions of that contract is that, if the "purchaser shall fail to comply with any of the terms, covenants, or conditions of any other contract existing between the Purchaser and the Seller, the Seller may, without notice to the Purchaser, declare all of the rights of the Purchaser under this contract terminated, and without demand first made and with or without legal process immediately take possession of said personal property." Thus, under the provisions of the conditional sales contract, the trucks in question were, as between plaintiff and defendant, security not only for the payment of the amount unpaid upon the conditional sales contract, but also for the payment of any money that may have been due and unpaid on the other contracts which plaintiff had assigned and guaranteed payment of to the defendant. The court below was in error in rejecting evidence offered by the defendant tending to show that plaintiff was in default on purchasers' contracts which plaintiff had assigned and guaranteed payment of to the defendant. Nor does the conversation which Mr. Workman claims to have had with the associate manager of the defendant in July, 1929, justify the conclusion that defendant company released its claim to the trucks. In answer to the inquiry if it "would be possible for you to turn those reserves and contingent credits" on the conditional sales contract for the trucks, it is claimed that the associate manager responded,

"Yes. That will be all right. We can do that." Such language falls short of a binding agreement between plaintiff and defendant to the effect that the reserve and contingent credits were so applied and the trucks discharged from the provisions of the conditonal sales contract covering the trucks. Moreover, the amount unpaid upon the two trucks at the time the conversation is alleged to have taken place and at the time of the alleged conversion was apparently more than the amount of the credit to which plaintiff claims it was entitled as contingent credit and reserve. The total amount of the two latter sums as shown by the statements received in evidence amounted to $589 as of May 31, 1929. The record is silent as to the amount of such contingent credit and reserve at the time the conversation is alleged to have taken place or at any time other than as of May 31, 1929. The amount unpaid on the two trucks at the time the conditional sales contract was executed amounted to $1,-179.92. The only payment which plaintiff claims was made on the trucks under the conditional sales contract was the payment made at the time the contract was entered into and the payment of $138.02 made in the early part of July, 1929. If the payment of $138.02 and the amount of contingent credits and reserves in the sum of $850 were credited upon the amount owing upon the trucks, there would still remain unpaid upon the trucks the sum of $56.90. While the evidence is extremely meager as to how the parties arrived at the amount of credit to which plaintiff was entitled on account of the items of contingent credit and reserve, it would seem from what is made to appear that defendant, in the absence of an agreement to the contrary, was entitled to offset against such credits any amount which may have been due and owing to the defendant upon the contracts which plaintiff had sold, assigned, and guaranteed the payment of to the defendant. The evidence before us, when viewed in a light most favorable to plaintiff, fails to show that it was, at the time of the alleged conversion, the owner of, and entitled to retain possession of, the trucks involved in this

litigation. The motion for a nonsuit should have been granted.

We are also of the opinion that the court below was in error in permitting Mr. Workman to testify that the officers of the defendant company, prior to the time the conditional sales contract was entered into, stated that plaintiff would from time to time be given 60-day extentions, not exceeding in all 6 months, in which to pay the amount owing upon the trucks in question. Such evidence offends against the rule that parol evidence may not be received to vary the terms of a written contract. The conditional sales contract is complete within itself. There is nothing uncertain or amibiguous about its terms. It expressly provides that "it contains the entire agreement between the contracting parties."

For the reasons stated, the judgments should be, and accordingly is, reversed. This cause is remanded to the district court of Salt Lake county, with directions to grant a new trial. Should the parties be so advised, leave should be given to amend their pleadings. Appellant is awarded its costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.