2011 UT 8

**Shelly ACOR, Plaintiff and Appellant,**

v.

**SALT LAKE CITY SCHOOL DISTRICT, Defendant and Appellee.**

No. 20091014.

Supreme Court of Utah.

Jan. 28, 2011.

Kenneth R. Brown, Ann Marie Taliaferro, and Robert C. Keller, Salt Lake City, for plaintiff.

John E.S. Robson and Joan M. Andrews, Salt Lake City, for defendant.

Justice LEE, opinion of the Court:

¶ 1 This is an interlocutory appeal from a decision granting the Salt Lake City School District's motion for summary judgment on Plaintiff-Appellant Shelly Acor's claim for reimbursement of attorney fees and costs under Utah Code section 52–6–201 (the "Reimbursement Statute"). Acor argues that she is entitled to reimbursement of fees and costs incurred in her successful defense of criminal charges of sexual abuse of a former student. Although Acor was acquitted on all charges, the School District challenges her right to reimbursement based on evidence suggesting that Acor developed an "inappropriate" relationship with the student in question. On that basis, the district court granted the School District's motion for summary judgment, holding that Acor could not have been acting "under color of authority" in cultivating an inappropriate relationship with a student and that the charges "arose from acts outside the scope of her duties and employment."

¶ 2 We conclude that the district court misinterpreted the Reimbursement Statute. It erred in assuming Acor's guilt despite her acquittal. We accordingly reverse, holding that Acor is entitled to reimbursement under the Reimbursement Statute.

I

¶ 3 From August 1992 to December 9, 2005, Shelly Acor was a teacher at Northwest Middle School in the Salt Lake City School District. In December 2005, Alissa Cortez, Acor's former student, alleged that she and Acor had had a sexual relationship that began in 1995 when Cortez was in the seventh

grade and lasted through the middle of Cortez's senior year of high school.

¶4 An associate superintendent for the School District interviewed Cortez on December 8, 2005. During the course of this interview, Cortez alleged that in 1995, Cortez and Acor, then her seventh grade English teacher, began a sexual relationship. According to Cortez, Acor used her authority as a teacher to advocate better grades for Cortez from other teachers, and Acor allowed Cortez to spend time in her classroom when she ran into trouble with other teachers or family members. Cortez also became Acor's student aide. During Acor's teacher-preparation period, Cortez alleged that they would shut Acor's classroom door and engage in sexual behavior.

¶5 The superintendent also interviewed Acor. During this interview, Acor admitted, without explanation, that "there was a relationship and it was totally inappropriate." Acor also admitted to feeling guilty as a result of the relationship and to speaking with ecclesiastical leaders and a therapist about the relationship. Acor orally resigned from her employment with the School District at the conclusion of the interview. The next day, she submitted a formal letter of resignation. Acor's teaching license subsequently was revoked.

¶6 During a subsequent police investigation, investigators seized a journal from Acor's residence. In a deposition taken for this civil action, the prosecutor testified that Acor's journal substantiated many of Cortez's allegations and read like an adult's description of a romantic relationship with another adult. The prosecutor testified, for example, that the journal corroborated Cortez's account that she spent time with Acor outside of school, at Acor's apartment, and in activities such as "having sleepovers and doing all sorts of extracurricular activities." The prosecutor recalled that the journal contained statements to the effect that "I'm so in love with [Cortez]. I love her. I miss her."

¶7 The District Attorney for Salt Lake County filed a criminal information on June 22, 2006, alleging that Acor sexually abused Cortez during her seventh grade year, from August 1994 to May 1995.[1] Counts I and II were alleged to have occurred at the school; Count III was alleged to have occurred at a public park not on school grounds.[2]

---

1. The statute of limitations had run on allegations of sexual abuse dating from Cortez's fourteenth birthday to the middle of her senior year, sometime between 1999 and 2000. *See* Utah Code Ann. § 76–1–302 (Supp.2010) (providing a four-year statute of limitations for forcible sexual abuse claims). Prosecution for sexual abuse of a child under fourteen years old is not subject to a statute of limitations. *See id.* § 76–1–301 ("[P]rosecution for the following offenses may be commenced at any time: ... (14) sexual abuse of a child ...."); *see also id.* § 76–5–404.1(1) (2008) (defining "child" for purposes of "sexual abuse of a child" statute as "a person under the age of 14").

2. Count I of the information charged:
   SEXUAL ABUSE OF A CHILD, a Second Degree Felony, at 1400 West Goodwin Avenue, in Salt Lake County, State of Utah, on or about August 1, 1994 through May 31, 1995, in violation of Title 76, Chapter 5, Section 404.1, Utah Code Annotated 1953, as amended, in that the defendant, SHELLY ACOR, a party to the offense, touched the anus, genitals, buttocks, or breasts of a child under the age of 14 years at the time of the offense, with the intent to arouse or gratify the sexual desires of any person, or to cause substantial emotional or bodily pain to any person.
   Count II charged:

   SEXUAL ABUSE OF A CHILD, a Second Degree Felony, at 1400 West Goodwin Avenue, in Salt Lake County, State of Utah, on or about August 1, 1994 through May 31, 1995, in violation of Title 76, Chapter 5, Section 404.1, Utah Code Annotated 1953, as amended, in that the defendant, SHELLY ACOR, a party to the offense, had a child under the age of 14 years at the time of the offense, take indecent liberties with the defendant with the intent to arouse or gratify the sexual desires of any person, or to cause substantial emotional or bodily pain to any person.
   Count III charged:
   SEXUAL ABUSE OF A CHILD, a Second Degree Felony, at 5400 South 2700 West, in Salt Lake County, State of Utah, on or about August 1, 1994 through May 31, 1995, in violation of Title 76, Chapter 5, Section 404.1, Utah Code Annotated 1953, as amended, in that the defendant, SHELLY ACOR, a party to the offense, touched the anus, genitals, buttocks, or breasts of a child under the age of 14 years at the time of the offense, with the intent to arouse or gratify the sexual desires of any person, or to cause substantial emotional or bodily pain to any person.

¶ 8 A jury acquitted Acor of all charges on May 10, 2007. At trial, Acor's journal was excluded from evidence, as were her statements to the assistant superintendent that "there was a relationship [with Cortez] and it was totally inappropriate" and that she had spoken with ecclesiastical authorities and a therapist. On May 17, 2007, Acor sought reimbursement from the School District of her costs and fees in defending the criminal action. The School District denied Acor's request for reimbursement, and this lawsuit ensued. During discovery in this lawsuit, Acor refused to respond fully to certain requests for admission and to produce certain documents, including her journal, which police had illegally seized.

█ ¶ 9 After discovery, both parties moved for summary judgment. On November 12, 2009, the district court granted the School District's motion for summary judgment and denied Acor's motion for partial summary judgment. Acor filed an interlocutory appeal to this court, which we granted. We review the district court's denial of Acor's motion for partial summary judgment and its grant of the School District's motion for summary judgment for correctness, according no deference to the district court's decision. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1111–12 (Utah 1991).

## II

¶ 10 The Reimbursement Statute sets forth the conditions for reimbursement of public employees for attorney fees and costs incurred in the successful defense of criminal charges:

> If a state grand jury indicts, or if an information is filed against, an officer or employee, in connection with or arising out of any act or omission of that officer or employee during the performance of the officer or employee's duties, within the scope of the officer or employee's employment, or under color of the officer or employee's authority, and that indictment or information is quashed or dismissed or results in a judgment of acquittal, unless the

indictment or information is quashed or dismissed upon application or motion of the prosecuting attorney, that officer or employee shall be entitled to recover reasonable attorney fees and court costs necessarily incurred in the defense of that indictment or information from the public entity, unless the officer or employee is found guilty of substantially the same misconduct that formed the basis for the indictment or information.

UTAH CODE ANN. § 52–6–201(1) (Supp.2010).[3]

█ ¶ 11 This provision states a general rule subject to two exceptions. The general rule is that a public employee is entitled to reimbursement when employment-related criminal charges result in a judgment of acquittal or dismissal of the information. The exceptions arise where (1) the "indictment or information is quashed or dismissed upon application or motion of the prosecuting attorney," or (2) the "officer or employee is found guilty of substantially the same misconduct that formed the basis for the indictment or information." *Id.* Neither exception applies in this case. Acor was prosecuted on—and acquitted of—the charges of sexual misconduct set forth in the information, and she was not found guilty of the same misconduct.

¶ 12 The School District nevertheless argues that Acor should be ineligible for reimbursement because, in its view, she actually committed the crimes of which she was acquitted. The District bases its view on Acor's admission that an "inappropriate" relationship existed between Acor and Cortez. In addition, the School District points to Acor's resignation, her journal (excluded at trial), and her refusal to provide certain documents and admissions during discovery in this action. In light of this evidence, the School District insists that the acts giving rise to the criminal information against Acor amounted to sexual misconduct that could not have been committed during the performance of her duties, within the scope of her employment, or under color of her authority.

---

**3.** Because there have been no substantive changes to the relevant statutes that would affect

this opinion, we cite to the current versions, unless otherwise indicated.

¶ 13 In support of this argument, the School District cites cases from this court and from other jurisdictions holding that sexual misconduct in the workplace falls outside the scope of employment, *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1058 (Utah 1989), and is not under color of state law, *J.H. ex rel. D.H. v. W. Valley City*, 840 P.2d 115, 119–21 (Utah 1992).[4] Acor, for her part, cites an alternative line of cases finding alleged sexual misconduct to be within the scope of public employment when the charged actions occurred during the time and place of employment.[5]

¶ 14 Thus, the parties' competing arguments analyze the employment-relatedness of Acor's actions at different levels of generality. At a high level of generality, it seems apparent that Acor was performing her job at the time and place of the conduct giving rise to the alleged sexual abuse, since her contacts with Cortez took place mostly on school property, during school hours, and while Acor was serving in her capacity as a teacher. On the other hand, at a more specific level it could be said that Acor ceased performing her job and exceeded its scope the moment she engaged in the alleged sexual misconduct. Surely no public employer hires its workers to perform criminal acts, and in that sense sexual misconduct may appear to be beyond the scope of employment and not under color of a worker's authority.

¶ 15 The *Birkner* case exemplifies the latter, more particularized analysis of the job-relatedness of a worker's conduct. In *Birkner* we held that a government employer was not vicariously liable for or required to indemnify a therapist who admitted to sexual abuse of a patient at a county mental health clinic. In determining the "scope of employment" for vicarious liability purposes, the *Birkner* court identified three relevant criteria: (1) whether the employee's conduct is "of the general kind the employee is employed to perform"; (2) whether the conduct is "within the hours of the employee's work and the ordinary spatial boundaries of the employment"; and (3) whether the conduct is "motivated, at least in part, by the purpose of serving the employer's interest." 771 P.2d at 1056–57. Applying these criteria, the *Birkner* court held that the therapist's conduct was outside the scope of his employment and thus that his employer was not vicariously liable. Specifically, although the "misconduct took place during, or in connection with, therapy sessions," we concluded in *Birkner* that it was not the general kind of activity a therapist is hired to perform and that "it served solely the private and personal interests of" the therapist. *Id.* at 1058.

¶ 16 The School District urges a similar analysis in this case. It insists that Acor's sexual misconduct was not the kind of conduct that she was hired to perform and that it served only her personal interests. Thus, the School District asserts, Acor is ineligible for reimbursement of her fees and costs on the ground that her acts were not during the performance of her duties, within the scope of her employment, or under color of her authority.

■ ¶ 17 This argument ignores key distinctions between the vicarious liability stan-

---

4. The School District also cited one California Supreme Court case. *John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948, 953–57 (1989) (holding that school district was not vicariously liable for junior high school teacher's sexual assault of a student because teacher was not acting within the scope of his employment).

5. *See, e.g., Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 723–24 (3d Cir.1989) (holding that school band director's sexual abuse of student occurred during course of performance of official duties where misconduct occurred on school property and during school activities); *Bower v. Bd. of Educ.*, 287 N.J.Super. 15, 670 A.2d 106, 116 (1996) ("[Criminally charged teacher's] al-leged victims were his students and the alleged criminal acts occurred during the school day upon school premises."), *aff'd*, 149 N.J. 416, 694 A.2d 543 (1997); *cf. Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir.1997) (holding that there was no nexus between official duties as former teacher and sexual assault where teacher molested student off campus, five months after student withdrew from school); *D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1178–92 (10th Cir.1990) (holding that teacher accused of sexually abusing student was acting outside of duties because alleged acts occurred during summer vacation, when teacher was free from all obligations to school district, and alleged abuse took place at teacher's home following a non-school-affiliated fundraiser).

dard at issue in *Birkner* and the reimbursement question presented here. The vicarious liability standard is aimed at and informed by the goal of attributing to the employer " 'those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.' " *Id.* at 1056 (quoting PROSSER AND KEETON ON THE LAW OF TORTS § 70, at 502 (W. Page Keeton et al. eds., 5th ed.1984)). The reimbursement inquiry has a different focus. It is aimed at protecting public employees from the costs of successfully defending against criminal charges that arise out of public employment.[6]

¶ 18 Because the nature of and motivation for the employee's acts are before the court that decides secondary tort liability, it makes sense for the court to engage in a specific examination of those issues in deciding the scope of employment question. Thus, in the context of a government employer's secondary liability for sexual misconduct, the *Birkner* court considered not just the time, place, and general nature of the employee's acts, but also whether the specific conduct could plausibly advance the employer's objectives.

¶ 19 This sort of specific evaluation of the employment-relatedness of the worker's misconduct, however, is not compatible with the Reimbursement Statute. In light of the context, structure, and language of the statute,[7] we conclude that the job-relatedness of a public employee's conduct under the Reimbursement Statute must be evaluated at a high level of generality, without regard to the actual guilt or innocence of the charged party.

¶ 20 First, under the statute, the right of reimbursement attaches upon acquittal (or dismissal of the information)—*except* where the employee is found guilty on substantially similar charges (or where the dismissal is at the behest of the prosecutor). UTAH CODE ANN. § 52–6–201(1). Since Acor was *not* "found guilty" of substantially similar charges in an underlying criminal proceeding, her right to reimbursement cannot be defeated by a specific finding in the civil reimbursement action that she was *actually guilty* of similar conduct (and thus outside her employment and ineligible for reimbursement). Under the Reimbursement Statute, the specific determination whether the employee actually committed criminal wrongdoing is to be made in the underlying criminal action (by conviction or acquittal). That determination is not subject to reconsideration in a subsequent civil suit for reimbursement.

¶ 21 Despite the acquittal, the School District questions Acor's innocence on the grounds that she admitted to an "inappropriate" relationship with Cortez and successfully excluded incriminating evidence at the criminal trial. The Reimbursement Statute leaves no room for a court to question the propriety of an acquittal, however—much less an employee's worthiness for reimbursement on the basis of an unspecified "inappropriate" relationship. The District's strongly held and presumably sincere belief in Acor's guilt cannot defeat her right to reimbursement under the statute. As the New Jersey Supreme Court explained under a parallel provision, "the statute may mandate [reimbursement] in cases in which, despite a favorable disposition of the criminal charges, doubts may persist about the actual innocence of the teacher seeking reimbursement." *Bower v. Bd. of Educ.,* 149 N.J. 416, 694 A.2d 543, 553

**6.** *See, e.g., Bower,* 670 A.2d at 115 ("[A] teacher may be at risk for allegations of improper conduct, and even criminal conduct, in a setting in which he or she is exposed to the imagination of an immature student population.... [B]ut for the teaching relationship, or the teacher's proximity to an alleged victim, the allegation would not have been filed in the first instance."); *Monti v. Warwick Sch. Comm.,* 554 A.2d 638, 641 (R.I. 1989) (Murray, J., concurring) (noting that teachers are "particularly vulnerable to suit" because of contact with students); *see also Valerius v. City of Newark,* 84 N.J. 591, 423 A.2d 988, 991 (1980)

("Police officers, by the very nature of their duties, are exposed to a substantial risk that such civil or criminal actions will be initiated, regardless of their merits." (internal quotation marks omitted)).

**7.** *See Day v. Meek,* 1999 UT 28, ¶ 16 n. 6, 976 P.2d 1202 ("[W]e cannot interpret the statute we are charged with construing without looking to the overall context of the statutory structure at issue.").

(1997). The School District "may question the soundness of that legislative judgment but it cannot disregard the statute's clear mandate." *Id.*

¶ 22 Second, the right of reimbursement attaches where the alleged acts or omissions were "*in connection with* or *arising out of*" the performance of the employee's duties, the scope of employment, or under color of authority. UTAH CODE ANN. § 52–6–201(1) (emphases added). That broad formulation implies a general inquiry into the causal relationship between the employee's conduct and the underlying criminal charges,[8] not a specific consideration whether the precise conduct in question advances the employer's interests or is the kind of activity the employee was asked to perform. Indeed, this more specific inquiry would eviscerate the terms and conditions of the Reimbursement Statute, since criminal conduct would rarely if ever be in the employer's interest or at its behest.

■ ¶ 23 If we accepted the School District's invitation to determine whether Acor's misconduct was unlawful despite her acquittal, we would effectively be rewriting the Reimbursement Statute—permitting a reexamination of an employee's guilt of the underlying criminal conduct under the guise of an inquiry into employment-relatedness. This we decline to do. Instead, we hold that the employment-relatedness inquiry under the Reimbursement Statute is based on a general evaluation of the time, place, and nature of the acts giving rise to the criminal charges. If the acts or omissions giving rise to such charges occur at a time and place of authorized employment, acquittal of those charges generally will suffice to entitle the employee to reimbursement. Such right of reimbursement may not be rebutted, moreover, by specific proof in the civil reimbursement action that the employee was truly guilty of the underlying charges and thus was not performing her duties or acting within the scope of her employment.

8. *See, e.g., Workman Motor Co. v. Pac. Fin. Corp.,* 83 Utah 19, 26 P.2d 961, 964 (1933) ("[T]he word 'connected' may have a broad signification;

### III

■ ¶ 24 Under this standard, we have no trouble finding that the charges against Acor arose out of or were in connection with conduct within the scope of her employment and during the performance of her duties. Acor's alleged misconduct occurred mostly on school grounds, during school hours, and in circumstances in which Cortez was under her control. In the course of their relationship as teacher and student aide, Acor and Cortez necessarily spent time together, often alone. It was Acor's performance of her responsibility of interacting with Cortez that gave rise to the criminal charges against her. Thus, at a high level of generality, the criminal allegations in the information arose out of and were in connection with conduct within the scope of Acor's employment and during the performance of her duties as a school teacher.

¶ 25 It is no answer to note, as the School District does, that Acor's duties did not extend to her alleged involvement in an inappropriate relationship with a student. Acor was acquitted of charges arising out of that alleged relationship, and the Reimbursement Statute leaves no room for us to second-guess the acquittal.

¶ 26 The criminal charges against Acor also arose out of alleged acts committed under color of her authority as a school teacher. Acor was accused of abusing her authority as a school teacher, turning her responsibility of interacting with Cortez as a student and aide into an opportunity to sexually abuse her. Indeed, Cortez allegedly derived benefits from Acor's authority—better grades from other teachers and a place to skip class, among other things. In this sense, there is little doubt that the criminal charges against Acor directly arose out of acts alleged to have been committed under color of her authority as a teacher. *See Hackett v. Fulton Cnty. Sch. Dist.,* 238 F.Supp.2d 1330, 1356 (N.D.Ga.2002) (holding that a school teacher acts under color of state law when assault or abuse of student occurs when student is under teacher's authority).

the connection may be slight or intimate, remote or near. . . .").

¶ 27 The School District contends that Acor's alleged conduct could not have been under color of her authority under our analysis in *J.H. ex rel. D.H. v. West Valley City*, 840 P.2d 115 (Utah 1992). In *J.H.*, we held that a police officer who sexually abused a youth in a patrol car (under the guise of teaching standard relaxation techniques) was not acting as a policymaker for or according to custom of West Valley City and thus was not acting " 'under color of any statute, ordinance, regulation, custom or usage' " of Utah law. *Id.* at 119 (quoting 42 U.S.C. § 1983). Similarly here, the School District argues, the district court properly held that Acor could not have been acting under "color of authority" of the District because it had a policy prohibiting sexual relationships between students and teachers.

¶ 28 *J.H.* does not support the School District's position. The "color of authority" provision in the Reimbursement Statute is significantly broader and more encompassing than the counterpart provision in the statute (section 1983) at issue in *J.H.* Presumably, there is never a government policy, regulation, or custom calling for public employees to engage in criminal behavior. But that is not the standard under the Reimbursement Statute; it requires only action under *color* of authority. Acor's interactions with Cortez were under color of her authority as a teacher, for reasons noted above. Acor obviously lacked authority to engage in sexual abuse of a student. But she was acquitted of doing so, and the Reimbursement Statute again leaves no room for us to question the propriety of her acquittal.

### IV

¶ 29 For these reasons, Acor is entitled to reimbursement for attorney fees and costs under the Reimbursement Statute. We reverse and remand for a determination of the amount of Acor's reasonable fees and costs.

¶ 30 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice LEE'S opinion.